### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| THOMAS E. NEAL,      )<br>     Petitioner,      )<br>                             )<br>v.                           )<br>                             )<br>MARTY C. ANDERSON,[1]  )<br>Warden, FCI Beckley,   )<br>     Respondent.      )   | CIVIL ACTION NO. 5:02-0367 |

### PROPOSED FINDINGS AND RECOMMENDATION

On April 23, 2002, Petitioner, an inmate at FCI Beckley, Beaver, West Virginia, and acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* By a Person in State or Federal Custody.[2] (Document No. 1.) Petitioner alleges that the Federal Bureau of Prisons [BOP] incorrectly calculated the date on which his federal sentence commenced. (Id., pp. 2-4.) On September 14, 2004, Petitioner further filed a Motion Requesting an Order Issue Stating Execution and Commencement of Sentence Imposed." (Document No. 8.) By Standing Order filed on April 24, 2002, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

---

[1] When Petitioner filed this civil action, Joyce K. Conley was serving as the Warden of FCI Beckley. Marty C. Anderson has since been designated as the Warden of FCI Beckley. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Marty C. Anderson is automatically substituted as the party Respondent in this civil action.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**PROCEDURE AND FACTS**

On February 23, 1993, a federal grand jury returned a three-count indictment against Petitioner in the Middle District of North Carolina, charging him with (Count One) bank robbery by force or violence in violation of 18 U.S.C. § 2113(a), (Count Two) bank robbery with a dangerous weapon in violation of 18 U.S.C. § 2113(d) & 2, and (Count Three) carrying and using a firearm during the commission of a bank robbery in violation of 18 U.S.C. § 924(c)(1) & 2. United States v. Neal, Case No. 2:93-cr-00050-02 (M.D. N.C. Oct. 5, 1993). (Document Nos. 1, p. 2 and 6, p. 2.) Petitioner was arrested on March 8, 1993, by North Carolina state authorities for robbery and assault. (Id.) On March 10, 1993, while in state custody, a state parole violation warrant was issued. (Id.) An additional three-count indictment was returned by a federal grand jury on March 29, 1993, containing charges identical to the first federal indictment, but pertaining to a different offense. United States v. Neal, Case No. 2:93-cr-00068-01 (M.D. N.C. Oct. 5, 1993). (Id.) While remaining in state custody on the parole violation sentence, Petitioner was borrowed by federal authorities and on May 14, 1993, entered a guilty plea to counts two and three of each of the federal indictments. (Document No. 6, p. 2, Exhibit B, ¶¶ E-F.) On September 30, 1993, Petitioner was sentenced by the District Court for the Middle District of North Carolina to a 148 month term of imprisonment, to be followed by a five year term of supervised release.[3] (Document No. 6, p. 2,

---

[3] The Judgment in a Criminal Case, as entered by the District Court for the Middle District of North Carolina on October 5, 1993, provides:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of twenty-eight (28) months under count 2 of 2:93CR50-2, a consecutive term of twenty-four (24) months under count 3 of 2:93CR50-2, a concurrent term of twenty-eight months under count 2 of 2:93-CR68-1 and a consecutive term of ninety-six (96) months under count 3 of 2:93CR68-1 also which is consecutive to counts 2 and 3 in 2:93CR50-2.

Exhibit A.) The District Court further ordered that Petitioner make restitution in the total amount of $3,760.00, to two banks and one individual. (Id.) Petitioner was later returned to state authorities. (Document No. 6, p. 2, Exhibit B, ¶ G.) Petitioner's state parole violation sentence expired on December 23, 1993, but state authorities continued to detain him upon the March 8, 1993, pending robbery and assault charges. (Document No. 1, p. 2 and 6, p. 2, Exhibit B, ¶ H.) On April 28, 1994, Petitioner was sentenced upon his state robbery and assault charges to a 15 year term of imprisonment, to run consecutive to all other sentences, including his federal sentence. (Id., p. 2 and Exhibit C and Exhibit B, ¶ I.) Petitioner was further sentenced by state authorities on May 2, 1994, to a concurrent two year term of imprisonment for possessing a dangerous weapon while in jail. (Document No. 6, Exhibit B, ¶ J.) Petitioner remained in state custody until December 15, 1999, when he was released by state authorities to federal authorities. (Id., ¶ K.)

On March 8, 2001, Petitioner submitted to staff at FCI Beckley his "Request for Administrative Remedy Informal Resolution Form," in which he requested a *nunc pro tunc* designation. (Document No. 1, Exhibit D.) His request was forwarded to the Mid-Atlantic Regional Office for consideration and to obtain comments from the federal sentencing Judge. (Id.) Petitioner's request was denied. On May 23, 2001, Petitioner submitted a further Request for Administrative Remedy to then Warden Joyce Conley, requesting an explanation for the denial. (Id., Exhibit F.) By Response dated June 15, 2001, Warden Conley stated that the designation was denied "based upon the fact [he was] accepted into Federal custody on December 15, 1999, despite the fact that [his] state sentence had not been satisfied." (Id, Exhibit G.) Warden Conley advised Petitioner:

---

(Document No. 6, Exhibit A, p. 2.)

> Although your request for a nunc pro tunc designation was denied, you can petition the state for return. If state return is denied, we will retain custody and the sentence computation will stand. If you are returned to the state, a Barden letter will be prepared for the court, to inform the federal sentencing judge that you have been returned to the state and the Judge has the option to run your federally imposed sentence concurrent to the state sentence you are serving.

(Id.) Petitioner appealed the Warden's decision to the Regional Director on June 23, 2001. (Id.) By response dated June 28, 2001, the Regional Director affirmed the Warden's response and advised Petitioner that "[a]lthough the Federal sentence in Case 2:93CR50-2 and Case 2:93CR68-1, was imposed prior to your release from the Parole Violation term, the Federal term could not commence until you were received into the custody of Federal authorities." (Id.) Therefore, pursuant to 18 U.S.C. § 3585(a), the BOP deemed his federal sentence to have commenced on December 15, 1999. (Id.) On August 10, 2001, Petitioner filed his Central Office Administrative Remedy Appeal, which was denied on August 27, 2001. (Id., Exhibit H.)

On April 23, 2002, Petitioner filed his instant Application under 28 U.S.C. § 2241, in which he challenges the BOP's computation of his sentence. (Document No. 1.) Petitioner contends that his federal sentence should have commenced on December 23, 1993, upon the expiration of his state parole violation sentence, and not on December 15, 1999, when he was transferred to the physical custody of the BOP. (Id.) He states:

> Mr. Neal was officially released from prior NC DOC parole on 12-23-93, when current federal sentence once again began to run, and ran until 4-28-94, when he was writted back to the State of NC to appear in court, and was never returned to federal custody.
> It was no fault of the Petitioner where he was taken in custody to serve his sentence. . . His computation states that Mr. Neal received a total of 127 days credit from 12-23-93 to 12-15-99, when he was again placed back in the custody of the United States Marshall to begin serving current federal sentence.
> This is due to an improper execution of a judgment commitment order.

(Id., p. 3.)

By Order entered on May 13, 2002, the undersigned directed Respondent to show cause, if any, why Petitioner's Petition for Writ of Habeas Corpus should not be granted, to which Respondent filed her Response on June 3, 2002. (Document Nos. 5 and 6.) Respondent argues that pursuant to 18 U.S.C. § 3585(a), Petitioner's federal sentence was deemed to have commenced on December 15, 1999, when he was released by state authorities to the custody of the United States Marshal Service. (Document No. 6, pp. 4-7.) Respondent contends that the State obtained primary jurisdiction over Petitioner when he was first arrested by state authorities on March 8, 1993. (Id., p. 4.) Although his state parole violator sentence expired on December 23, 1993, prior to the imposition of his second state sentence, the State retained its primary jurisdiction to impose judgment and sentence upon the robbery and assault charges without releasing him to the custody of the BOP. (Id.) "Had state authorities turned Petitioner over to federal authorities upon the expiration of his state parole violation sentence, the state would have relinquished its primary jurisdiction and Petitioner's federal sentence would have commenced on December 23, 1993." (Id., p. 7.) The state therefore, possessed continuous primary jurisdiction over Petitioner until he was released by state authorities to federal authorities on December 15, 1999, the date on which his federal sentence is deemed to have commenced. (Id.)

Respondent further contends that a *nunc pro tunc* designation was deemed inappropriate by the BOP because Petitioner's federal sentence was not ordered to run concurrent to his state sentence. (Document No. 6, pp. 8-11.) Title 18, U.S.C. § 3584(a), requires that terms of imprisonment imposed at different times run consecutively, unless ordered concurrently by the Court. (Id., p. 9.) Petitioner's federal sentence was not ordered to run concurrent to his state sentence and therefore, this silence was interpreted by the BOP to require the sentences to run consecutively.

5

(Id.) After imposition of his federal sentence, the State court ordered his second state sentence to run consecutive to his federal sentence. (Id., p. 10.) "Had the state court ordered the state sentence concurrent to the existing federal sentence, a nunc pro tunc designation may have been appropriate, depending on the response of the federal judge to the recommendation by the state that the state sentence run concurrent." (Id.)

Finally, Respondent argues that Petitioner is not entitled to any further credit against his federal sentence. (Document No. 6, pp. 10-11.) Pursuant to 18 U.S.C. § 3585(b), the BOP granted Petitioner credit for time spent in state custody beginning March 8, 1993, and ending March 9, 1993, representing the time spent in State custody prior to the execution of the parole violator warrant, which time was not credit against his State sentence. (Id., p. 11.) The BOP further granted Petitioner credit for the time period beginning December 24, 1993, when he completed his first state sentence, and ending April 27, 1994, when his second state sentence was imposed for robbery and assault. (Id., pp. 11-12.) This credit was also given because the time was not otherwise credited against his state sentence. (Id., p. 12.) Respondent contends that Petitioner is not entitled to credit for the remaining time spent in state custody because that time was credited against his State sentences. (Id.)

On June 11, 2003, Petitioner filed his "Traverse to Respondent's Motion to Show Cause," in which he states that he "is not arguing prior credit; petitioner is challenging the Illegal execution date of his federal sentence, whereas in a case such as this the only avenue toward correction is a NUNC PRO TUNC DESIGNATION." (Document No. 7, pp. 2-3.) Citing United States v. Croft, 450 F.2d 1094 (6th Cir. 1971), Smith v. Swope, 91 F.2d 260 (9th Cir. 1937), Kiendra v. Hadden, 763 F.2d 69 (2d Cir. 1985), and Cozine v. Crabtree, 15 F.Supp.2d 997 (D. Or. 1998), Petitioner argues that under the doctrine of dual sovereignty, he was entitled to serve his terms of

6

imprisonment continuously, without interruption, and therefore, his federal sentence must be deemed to have commenced upon the expiration of his parole violation sentence. (Id., pp. 3-5.) Accordingly, Petitioner requests that a *nunc pro tunc* designation be made, thereby causing his federal sentence to have commenced on December 23, 1993. (Id., p. 5.)

## ANALYSIS

Petitioner alleges that his federal sentence should have commenced on December 23, 1993, when his state parole violation sentence expired. Title 18, United States Code, Section 3585(a) provides that a federal sentence does not begin to run until the United States Attorney General receives the defendant into custody for service of the sentence.[4] See Thomas v. Whalen, 962 F.2d 358, 364 (4th Cir. 1992)(holding that 18 U.S.C. § 3568 (*repealed*), the predecessor to § 3585(a), "dictates that federal sentences commence on the date the prisoner is received at the penitentiary for the service of his sentence.") When a federal court imposes sentence upon a defendant already in state custody, as occurred in Petitioner's case, the principles of comity and primary jurisdiction dictate that the federal sentence does not commence until the state relinquishes its jurisdiction. See United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980). Under such circumstances, the state retains primary custody over the defendant until its jurisdiction ends in some fashion, e.g., expiration of the state sentence, bond or parole release, reversal of conviction, etc. See United States v. Evans,

---

[4] Section 3585(a) states:

**Commencement of sentence**. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

159 F.3d 908, 912 (4th Cir. 1998). "The concept of primary jurisdiction refers to 'the priority of service regarding a defendant's contemporaneous obligations to multiple sovereigns, whereby a defendant will fulfill his obligations to the sovereign with primary jurisdiction over him before any others.' " Trowell v. Beeler, 2005 WL 1181858, *2 n.2 (4th Cir. (N.C.) May 19, 2005)(quoting Savvas Diacosavvas, Note, Vertical Conflicts in Sentencing Practices: Custody, Credit, and Concurrency, 57 N.Y.U. Ann. Surv. Am. L. 207, 210 (2000).) Generally, the first arresting sovereign acquires primary jurisdiction "for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign." United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980).

Primary jurisdiction is not relinquished, however, when a defendant is borrowed pursuant to a writ of *habeas corpus ad prosequendum.* See Evans, 159 F.3d at 912.. This is because "the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities. . . . Principles of comity require that when the writ of habeas corpus *ad prosequendum* is satisfied, the receiving sovereign return the prisoner to the sending sovereign." Id. The time the defendant appears for prosecution of federal charges pursuant to an *ad prosequendum* writ is credited therefore, against the defendant's state sentence, not his federal sentence. Id.

Applying these principles to Petitioner's case, the undersigned finds that the State of North Carolina acquired primary jurisdiction over Petitioner on March 8, 1993, when state authorities first arrested him, and did not relinquish its jurisdiction over him until December 15, 1999, when Petitioner was physically released from state custody to federal authorities. Pursuant to 18 U.S.C. § 3585(a), Petitioner's federal sentence therefore, commenced on December 15, 1999. Although Petitioner's initial state sentence for his violation of parole expired on December 23, 1993, the State

continued its jurisdiction to consider the pending state robbery and assault charges which were the subject of his arrest in the first place. On December 15, 1999, the State relinquished its custody to federal authorities, prior to the expiration of Petitioner's robbery and assault state sentence. Petitioner however, essentially challenges the order of execution of his multiple sentences and argues that his federal sentence should have commenced on December 23, 1993, when his state parole violation sentence expired, and that the BOP erred in denying him a *nunc pro tunc* designation. Title 18, U.S.C. § 3621(b) grants the BOP broad discretionary authority to determine the location in which a defendant will serve his term of imprisonment. Section 3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, . . . . The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another. . . .

18 U.S.C. § 3621(b). "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." Evans, 159 F.3d at 911-12. A *nunc pro tunc* designation request must be considered by the BOP, but is not mandated.[5] See Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1990).

---

[5] The *Barden* Court explained a *nunc pro tunc* designation as follows:

> The Latin phrase *nunc pro tunc* describes a doctrine that permits acts to be done after the time they should have been done with a retroactive effect - - a Latin term meaning literally, "now for then." An act *nunc pro tunc* is an "entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake." *Black's Law Dictionary* at 964 (5th ed. 1979).

The BOP satisfied its obligation and considered Petitioner's *nunc pro tunc* designation request, but deemed that such designation was inappropriate because Petitioner's federal sentence was silent as to whether the sentence was to run concurrent or consecutive to his prior state sentence. Title 18, U.S.C. § 3584(a) provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." The District Court for the Middle District of North Carolina was silent as to whether Petitioner's federal sentence was to run concurrently or consecutively to his pre-existing state sentence and therefore, in accordance with § 3584(a), the sentence ran consecutive to the state sentence. See United States v. Saunders, 1998 WL 539482 (4th Cir. (N.C.) Aug. 25, 1998), cert. denied, 526 U.S. 1011, 119 S.Ct. 1157, 143 L.Ed.2d 222 (1999). With respect to Petitioner's second state sentence of 15 years of imprisonment for robbery and assault, the State expressly stated that the sentence was to run consecutive to all pre-existing sentences, including his federal sentence. As Respondent notes, had the state ordered the sentence concurrent to his federal sentence, then a *nunc pro tunc* designation may have been warranted.

Petitioner's reliance upon Croft, Swope, Hadden, and Cozine, is misplaced. In Swope and Croft, the Circuit Courts held that when federal courts order a defendant's commitment to a federal prison "immediately" or "forthwith," for purposes of § 3568 (now § 3585(a)), the federal sentence is deemed to have commenced on the date the court's order issued and not when the defendant was physically transferred to the federal facility. Croft, 450 F.2d at 1098; Swope, 91 F.2d at 261-62; cf. Vaughn v. United States, 548 F.2d 631, 633 (6th Cir. 1977)(limiting Croft to instances in which the state court orders its sentence to run concurrent to the federal sentence.). In Hadden and Cozine, the

---

*Barden*, 921 F.2d at 477-78, n.2.

federal courts ordered the defendants' sentences to commence upon the expiration of the pre-existing state sentences, which the defendants were currently serving. Hadden, 763 F.2d at 72; Cozine, 15 F.Supp.2d at 1008-10. The United States Marshal Service, however, failed and refused to take custody of the defendants upon the expiration of their state sentences, and therefore, their sentences were determined to have commenced on the date as directed in the federal courts' orders. Hadden, at 73; Cozine, at 1009-10. These cases are factually inapposite to the circumstances surrounding Petitioner's sentences. The District Court for the Middle District of North Carolina was silent as to the commencement of his federal sentence and did not order that the sentence was to begin immediately or forthwith upon the expiration of his state parole violation sentence. Furthermore, the Marshal Service was neither asked by the state authorities to accept custody of Petitioner, nor did they refuse to accept custody of him. The District Court's silence was correctly interpreted by the BOP to run consecutive to the state parole violation sentence. The state retained jurisdiction over Petitioner after the expiration of the parole violation sentence, and therefore, the federal sentence could not commence until the state relinquished its primary custody of him. The state, however, relinquished jurisdiction over him prior to the expiration of his second state sentence for burglary and assault and therefore, the BOP was not able to impose a *nunc pro tunc* designation. Accordingly, Petitioner has not demonstrated that the BOP improperly calculated the date on which his federal sentence commenced.

     Additionally, the undersigned finds that Petitioner is not entitled further credit against his federal sentence. Petitioner received credit against his federal sentence for the time spent in state custody for the period beginning on March 8, 1993, and ending on March 9, 1993, reflecting the time prior to the execution of the state parole violator warrant, and for the period beginning on

December 24, 1993, and ending April 27, 1994, reflecting the time period between the expiration of his parole violation sentence and the commencement of his second state sentence imposed for robbery and assault. Petitioner therefore, is not entitled to additional credit for the time spent in state custody. See United States v. Wilson, 503 U.S. 329, 337, 112 S.Ct.1351, 1355-56, 117 F.3d 593 (1992)(Because a defendant serving a state sentence is not in custody solely pursuant to federal charges, "Congress made clear [in 18 U.S.C. § 3585(b)] that a defendant could not receive a double credit."). Petitioner is also not entitled to credit for time he spent in secondary federal "custody" pursuant to writs of *habeas corpus ad prosequendum*. Pursuant to 18 U.S.C. § 3585(b), Petitioner is not entitled to credit for the remainder of his time spent in state custody because that time already has been credited toward his state sentence. Accordingly, the undersigned finds that Petitioner is not entitled to *habeas* relief and therefore, his Petition should be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's Motion Requesting an Order Issue Stating Execution and Commencement of Sentence Imposed (Document No. 8.), **DISMISS** Petitioner's Application (Document No. 1.) **with prejudice**, and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and

Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

ENTER: June 1, 2005.

R. Clarke VanDervort
United States Magistrate Judge